**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| DANIEL E. OWENS and BARBARA S. OWENS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>APPLE, INC.<br><br>    Defendant. | Case No: 3:09-cv-00479-MJR-DGW |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Plaintiffs hereby respond to the Motion to Dismiss and Brief in Support of its Motion to Dismiss ("Brief on Mt to Dismiss") filed by Apple, Inc. (hereinafter referred to as "Apple" or "Defendant") as follows:

### INTRODUCTION

Apple's Brief reflects not only a total misunderstanding of the Plaintiffs' claims, but also a cavalier attitude that it has the unequivocal right to change the rules after the game has started.

Apple bemoans the claims in the complaint as a restriction on its ability to raise the prices of its iTunes products, requiring it to "forever" sell its songs at the advertised and agreed upon price of 99 cents per song. Apple has it backwards. What the Plaintiffs seek to achieve is the simple truth that pervades every commercial transaction - that the consumer who purchases a product should receive the benefit of the bargain, and the price should be what was negotiated, and agreed upon, at the point of sale.

Apple is free to raise its price on its iTunes products. No one argues otherwise. What it CANNOT do is what it did in this case - induce unwitting consumers into purchasing its products premised on a representation that "Songs are 99¢", then, at an arbitrary date in the future, change the price so that the face amount, or value, of the card purchases a fewer number of songs than the number which formed the basis of the bargain. Likewise, what Apple CANNOT do is continue to sell iTunes gift cards, after its self-imposed price increase date of April 7, 2009, promising a sales price of 99 cents per song, then impose a higher charge of $1.29.

The transactions involving the Plaintiff putative class representatives demonstrate the absurdity of Apple's argument. Plaintiffs purchased two gift cards, in March 2008, for $25 each. Both contained the representation that "Songs are 99¢." Nothing at the point of sale disclosed to the Plaintiffs that the price per song could increase, and that the card would have less purchase power in the future. Yet, beginning in April 2009, the purchasing power of the outstanding balance of the cards purchased in March 2008 was drastically reduced.[1]

As to the card purchased in May 2009, the price of 99 cents per song was conspicuously noted on the card. Apple, in its brief, states that it will offer evidence that it ceased shipping cards with the "99" language "long before the price restructuring in April 2009", and that the last gift cards bearing such language was shipped to Sam's Club and Wal-Mart, where the plaintiffs purchased the cards, "in 2007." (Brief on Mt to Dismiss, p. 5, fn 5) What Apple intended to prove by the previous statement is unclear, but it is apparent that cards bearing the "99 cents" price promise were allowed to remain on the shelves after the price restructuring, and although

---

[1] In its brief, Apple makes a point of how many songs are available still available for 99¢. Without the benefit of discovery, Plaintiffs cannot say for sure exactly how many songs are available for 99¢. However, what is clear, and what Apple fails to point out, is that the songs sold for $1.29 are the most popular and best selling songs. For example, following the death of Michael Jackson and a large subsequent number of purchases of his songs, the price for many of his songs was suddenly increased to $1.29.

Apple states that it ceased shipping cards in 2007, it did nothing to remove the "99¢" cards from the shelves, and they continued to be purchased by consumers like the Plaintiffs. Indeed, the cards are still available for purchase today.

Apple's motion to dismiss should be overruled for the reasons set forth below.

**ARGUMENT**

*Federal Rule of Civil Procedure* 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement needs only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In addition, when ruling on a defendant's motion to dismiss pursuant to Rule 12(b)(6), a judge must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200* (2007) (citing *Twombly*, 127 S. Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827(1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974). The party seeking dismissal of the complaint bears the burden of showing that no claim has been presented. *Hedges v. United States,* 404 F. 3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages v. Fidelcor,* 926 F.2d 1406, 1409 (3d Cir. 1991)). The test is whether the complaint contains allegations which on their face constitute plausible entitlement to relief. *Twombly*, 550 U.S. at 556, 570, 127 S.Ct. at 1965, 1974.

Pursuant to *Federal Rule of Civil Procedure 9(b),* to maintain a claim for fraud, a plaintiff must allege facts which fairly allow the defendant to defend against the claim. That requires sufficient notice of the particulars of the misconduct alleged, but it does not require the

pleading of all "evidentiary details that will be used to support the claim at a later date." *Mutuelle Generale Francaise Vie v. Life Insurance Co. of Pennsylvania*, 688 F. Supp. 386, 393 (N.D. Ill. 1988) (citation omitted). Rather, the plaintiff "need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations." *Id.* If particulars of that type are missing from a complaint, *Rule 9(b)* contemplates and affords a liberal allowance to amend to add them. 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure Civ. 3d Ed.* § 1300 (2004). Lastly, if intent is an element of the fraud, the intent "may be alleged generally." *Fed.R.Civ.P. 9(b).*

## I. PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR BREACH OF CONTRACT.

Plaintiffs have properly pled each and every element required in order to maintain a claim for breach of contract. Apple suggests that Plaintiffs have not pled privity of contract with Apple, that there has not been a breach of the definite and certain contract term, and that the Plaintiffs have not been damaged. Apple has failed to offer any law in support of these allegations. Apple also ignores the direct relationship between Apple and the purchaser of the iTunes gift cards, the Plaintiffs' act of downloading songs directly from Apple's online store, and the successive ownership of the songs from Apple directly to the consumer. Moreover, Apple ignores the clear language of the price offering and the obvious damage resulting from a 30 cent price difference. For these reasons, and because Apple has not met its burden under Rule 12(b)(6), its Motion to Dismiss Plaintiffs' breach of contract claims is due to be denied.

### A. Plaintiffs Have Privity of Contract with Apple.

Apple incorrectly argues that Plaintiffs' breach of contract claims must fail because Plaintiffs are not in privity of contract with Apple. Apple bases this argument on the fact that Plaintiffs purchased their iTunes gift cards from third-party retailers - the "purchase of a gift card

4

from an independent third-party retailer is not a transaction with Apple." (Brief on Mt to Dismiss, p. 5).[2] In making this argument, Apple ignores both the practicalities of how its iTunes gift cards operate and its direct relationship and interactions with the consumers following the purchase of the gift card.

Apple markets, distributes, and sells iTunes gift cards which allow consumers to make online payment for purchases of songs from the iTunes Store. (Compl. ¶ 17). To redeem the gift cards, purchasers select songs (or other items) directly from Apple's iTunes Store online. (Compl. ¶ 17). Apple then 'honors' the terms of the gift card by delivering the songs or videos, via download, directly to the purchaser. (Compl. ¶ 17). The contract at issue in this litigation is the agreement between Apple (the iTunes Store) and the purchaser of the iTunes gift cards for the delivery of songs for 99 cents.[3] The gift card is both the instrument which contains the terms of the contract between the consumer and Apple, and the mechanism which allows Apple to deliver the songs directly to the purchaser.

Plaintiffs have properly alleged that Apple had a direct contractual relationship with the Plaintiffs. Plaintiffs allege that Apple "offered Plaintiffs…the opportunity to purchase any song from its iTunes store at the price of $0.99 per song if they would purchase a 99¢ iTunes Card." (Compl. ¶¶ 40, 46). "Plaintiffs….accepted the offer…by purchasing 99¢ iTunes Cards." (Compl. ¶¶ 41, 47). Plaintiffs also allege that Apple breached its contract by charging Plaintiffs

---

[2] Notably, Apple does not attempt to argue that it is unaffiliated with iTunes. Apple "marketed, distributed and sold iTunes gift cards and sold songs for individual purchase from the iTunes internet website it owns and operates." (Compl. ¶ 8).

[3] The transaction between the purchaser and the third party retailer is not at issue. The purchaser paid money for, and received, a legitimate iTunes gift card. The representations made on that gift card by the service provider (Apple) are at issue.

$1.29 to purchase certain songs. (Compl. ¶¶ 42, 48). Plaintiffs are in privity of contract with Apple based on their direct contractual relationship.

However, even if a direct contractual relationship between the parties was in question, the transfer of songs from the iTunes Store directly to the consumer creates privity of contract between Apple and the Plaintiffs. "Privity of contract or estate has been defined as mutual *or successive* relationship to the same rights of property." *Collins Co., Ltd. v. Carboline Co.,* 532 N.E.2d 834, 839 (Ill. 1988) (Emphasis in original). Apple made representations to consumers who purchase the iTunes gifts cards that "[s]ongs are 99¢ and videos start at $1.99." (Compl. ¶ 25). The songs purchased with the 99¢ gift card went directly from Apple to the Plaintiffs and were never in the control or possession of a third-party retailer. (See Compl. ¶ 23). Privity of contract exists due to the successive relationship to the rights of the songs.

Apple cites two cases which give the general rule that privity of contract is required in a breach of contract claim. Neither case is expounded upon or factually on point with this situation. Apple has ignored the direct contractual relationship it has with purchasers of the iTunes gift cards and has ignored the successive relationship to the rights of the songs. Apple has not met its burden of showing that Plaintiffs did not sufficiently pled privity of contract.

**B.** **Plaintiffs Have Pled a Breach of a Definite and Certain Contract Term.**

Apple claims that the price guarantee contained on the iTunes gift card is not a definite and certain contract term because, "the statement 'Songs are 99¢' does not say *all* songs for 99¢ *forever*." (Brief on Mt to Dismiss, p. 5) (emphasis in original). Apple appears to argue that the words "all" and "forever" are prerequisites which are necessary in order to create a contract. This is not the case.

"For a contract to be enforceable, the material terms of the contract must be definite and certain." *K4 Enterprises, Inc. v. Grater, Inc.,* 2009 WL 2581705, 5 (Ill.App. 1 Dist. 2009)(citing *Midland Hotel Corp. v. Reuben H. Donnelley Corp.,* 118 Ill.2d 306, 314 (1987). "[A] contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Id.* (other citations omitted). In this matter, the Court is able to determine the meaning of the following sentence: **"Songs are 99¢ and videos start at $1.99."** There is nothing vague or uncertain about Apple's representation.

Apple used qualifying language to make potential purchasers aware that not all videos were priced as low as $1.99. No qualifying language was used when conveying the price of songs. By using qualifying language with respect to one price offering and no qualifying language with another price offering in the same sentence, Apple created a significant distinction between the two offerings. Apple clearly and unequivocally offered purchasers of the 99¢ iTunes gift cards the right to download songs for the fixed price of 99¢ per song.

Apple did not cite a single case in support of its argument that the price guarantee is not a definite and certain term of the contract. Apple has not provided, and Plaintiffs have not found, any case law to suggest that Apple's price guarantee was not sufficiently definite or certain to be enforceable. Apple has not met its burden of proving this point.

  **C.**  **<u>Plaintiffs Have Suffered Damages.</u>**

Apple attempts to argue that a price increase from 99¢ to $1.29 (almost one-third above the bargained for price) did not damage the Plaintiffs. In support of this argument, Apple states that "[t]he gift cards are not like prepaid phone cards that entitle the purchaser to a specified

7

number of minutes."[4] (Brief on Mt to Dismiss, p. 6). Apple then makes no effort to distinguish between a prepaid phone card offering $25 worth of talking time at 10¢ per minute or an iTunes gift card offering $25 worth of entertainment at 99¢ per song.

Apple also argues that Plaintiffs were not damaged because they "would have been in exactly the same position if they had charged $15 or $25 to their credit card, or if, on their last birthday, someone had given them $15 or $25 in cash to buy songs on iTunes." (Brief on Mt to Dismiss, pp. 6-7). Plaintiffs respectfully disagree. The prepayment of an iTunes gift card requires that card to be redeemed at the iTunes Store. If purchasers were willing to charge "$15 or $25 to their credit card" or if they received "$15 or $25 in cash" they could have purchased online songs from any company of their choice. They could have chosen to download songs from another company based on price, song selection, usability of the website, or any other factor of importance to the consumer. Apple's guarantee to price their songs at 99¢ was part of the basis for the bargain. Purchasers gave up their freedom of choice in exchange for the price guarantee.

Apple did not cite a single case to support its argument that Plaintiffs have not been damaged.[5] Plaintiffs were, and have properly alleged that they were, damaged as a result of the price increase. (Compl. ¶¶ 42, 43, 48 and 49). Apple has not met its burden under Rule 12(b)(6) and its Motion to Dismiss Plaintiffs' breach of contract claims is due to be denied.

---

[4] Whether or not an iTunes gift card is analogous to a prepaid phone card is a merits question and not properly brought in a Motion to Dismiss. However, a prepaid phone card guarantees that for a prepayment of $[ ] the consumer will receive X number of minutes of telephone time at [ ]¢ per minute. Likewise, the 99¢ iTunes gift card issue guarantees that for a prepayment of $[ ] the consumer will receive songs for 99¢ per song which translates to X number of songs.

[5] Apple cites two cases in the first paragraph of its damage argument which provide the general rule that damages are an essential element for a claim of breach of contract. These cases are not factually on point and were not expounded upon.

## II. PLAINTIFFS HAVE PROPERLY PLED A CLAIM UNDER THE CONSUMER FRAUD ACT.

In order to state a claim under the Illinois Consumer Fraud Act ("ICFA"), a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 867 (N.D.Ill.,2006); (citing, *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149, 776 N.E.2d 151, 160, 267 Ill.Dec. 14 (Ill.2002); *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir.2005); *Eromon v. Grand Auto Sales, Inc.*, 351 F.Supp.2d 825, 827 (N.D.Ill.2004)).

Consumers raising ICFA claims are afforded "far broader" protection than those who bring common law fraud claims. *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 867 (N.D.Ill.,2006); citing, *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1128-29 (N.D.Ill.1995). Moreover, courts are to liberally construe the ICFA. *Id.;* citing, *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 675 N.E.2d 584, 594, 221 Ill.Dec. 389 (Ill.1996).

### A. Apple's Representation that "Songs are 99¢" While Pricing Some Songs at $1.29 was a Deceptive Act.

Apple appears to argue that as long as one song in its iTunes Store is available for 99¢, then the representation that **"Songs are 99¢ and videos start at $1.99"** is not misleading or deceptive. Apple ignores and misconstrues the plain meaning of its own representation. Apple makes two statements to potential purchasers regarding price - a variable price as to videos and a set price for songs. A potential purchaser relying on Apple's representation would be aware that not all videos are priced as low as $1.99 but <u>all songs are priced at 99¢.</u> Apple's representation

to consumers that 'songs are 99¢' and it's simultaneous pricing of some songs at $1.29 is a deceptive act which falls under the Illinois Consumer Fraud Act.

Apple also argues that "Plaintiffs allege *no* conduct by Apple"[6] and that Plaintiffs failed to plead the "who, what, when, where and how" of their claim. (Brief on Mt to Dismiss, p. 8). Such is not the case. Plaintiffs have satisfied Rules 9(b) and 12(b)(6) by alleging that Apple did the following:

(1) "marketed, distributed and sold iTunes gift cards" (Compl. ¶¶ 2, 17, 54) and "owned, operated and marketed an online store commonly known as the iTunes Music Store" (Compl. ¶¶ 12);

(2) "represented that consumers could use the gift cards to purchase songs from Defendant's iTunes internet website at a price of $0.99 per song" (Compl. ¶¶ 3, 20, 40, 46);

(3) that following a price increase from 99¢ to $1.29 for some songs, Apple "continued to advertise, market and sell 99¢ iTunes Cards." (Compl. ¶¶ 21,22, 54);

(4) "knowingly and fraudulently misrepresented, concealed, omitted, and/or suppressed the cost to purchase individual songs from its iTunes internet website. (Compl. ¶¶ 4, 57); and

(5) that since the price increase, Apple has charged customers who purchased the 99¢ iTunes gift cards, $1.29 to purchase certain songs. (Compl. ¶¶ 26, 27, 42, 48, 56).

---

[6] Apple appears to argue that it is insulated from responsibility for its conduct in connection with the iTunes gift cards because the named Plaintiffs purchased their gift cards from a third-party retailer. Apple fails to mention that consumers can, and do, purchase the gift cards directly from Apple. (Compl. ¶ 18). In other words, it is not necessary for consumers to go through a third-party retailer in order to purchase an iTunes gift card.

Pursuant to *Federal Rule of Civil Procedure 9(b),* to maintain a claim for fraud, a plaintiff must allege facts which fairly allow the defendant to defend against the claim. That requires sufficient notice of the particulars of the misconduct alleged, but it does not require the pleading of all "evidentiary details that will be used to support the claim at a later date." *Mutuelle Generale Francaise Vie v. Life Insurance Co. of Pennsylvania*, 688 F. Supp. 386, 393 (N.D. Ill. 1988) (citation omitted). The allegations stated above are sufficient to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. In fact, it is hard to imagine how Plaintiffs could plead their allegations in more detail or with more particularity. The unambiguous statement that "Songs are 99¢" leaves no room to second guess Apple's obligations to purchasers of the 99¢ iTunes gift cards. Apple's subsequent price increase, while it continued to market and sell 99¢ gift cards, was a deceptive act. Apple has not offered any law to the contrary.

### B. Plaintiffs Have Properly Pled Materiality.

Apple argues that Plaintiffs have failed to plead materiality because the misrepresentation (i.e. "Songs are 99¢") does not relate to a material fact. (Brief on Mt to Dismiss, p. 9). In other words, Apple argues that the price of the songs was not a material term to a contract. "A fact is material if 'the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act.'" *Muehlbauer v. General Motors Corp.,* 431 F.Supp.2d 847, 867 - 868 (N.D.Ill.,2006); citing *Mackinac v. Arcadia Nat'l Life Ins. Co.,* 648 N.E.2d 237, 239 (Ill.App. 1st Dist.1995). Price is a material term for any contract involving the sale of a good or service.

Plaintiffs have alleged that Apple offered a price of 99¢ per song to purchasers of the 99¢ iTunes gift card. The amount of money a consumer could expect to pay for a song is <u>exactly</u> the

"type of information upon which she would be expected to rely in making her decision to act." *See Muehlbauer,* 431 F.Supp.2d at 868. Likewise, a price increase of almost one-third above the bargained for price (from 99¢ to $1.29) is a breach of a material term. Apple offers no law in support of its contention that price is immaterial to the contract and has offered no reasoning in support of this statement.

### C. Plaintiffs Have Properly Pled Intent.

Plaintiffs properly allege that Apple intended for consumers to rely on its price guarantee.

> … Defendant intended that Plaintiffs and the members of the putative class would rely upon its misrepresentations, concealments, omissions and/or suppressions so that Plaintiffs and the members of the putative class would purchase 99¢ iTunes Cards.

(Compl. ¶ 57).

Apple's intent is clearly alleged in the Complaint and is evidenced by the words Apple used to promise the delivery of songs at a fixed price of 99 cents per song. Apple argues that Plaintiffs need to allege "how Apple could have had a fraudulent intent." (Brief on Mt to Dismiss, p. 10). In other words, Apple suggests that in order to sufficiently plead a claim under the Consumer Fraud Act, Plaintiffs must present evidence (prior to any discovery) of the mental operations of the Defendant. Apple misstates Plaintiffs obligations under Rule 9(b) and the law of this state.

*Federal Rule of Civil Procedure 9(b),* states that, '[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Furthermore, case law states that intent may be shown circumstantially. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30, 103 S. Ct. 683, 692 n.30 (1983) ("circumstantial evidence can be more than sufficient" in civil cases). Circumstances and implication frequently are the only means to demonstrate intent. *See id.*; *U.S. v. Starks*, 309 F.3d 1017, 1021 (7th Cir. 2002). Plaintiffs have properly pled intent.

### D. Plaintiffs Have Suffered Damages.

Plaintiffs were damaged as a result of Apple's refusal to honor the representations made on the iTunes gift cards and have properly alleged that they were damaged as a result of the price increase. (Compl. ¶¶ 42, 43, 48, 49, and 58). Plaintiffs fully incorporate by reference all statements and reasoning set forth in section I.C. of its Response.

### E. Plaintiffs' Have Properly Alleged Proximate Cause.

Apple's assertion that Plaintiffs have not properly pled proximate cause is completely devoid of merit. "[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." *Oliveira*, 776 N.E.2d at 164. The allegations required to properly plead proximate cause are minimal as "that determination is best left to the trier of fact." *Connick v. Suzuki Motor Company, Ltd.*, 675 N.E.2d 584, 595 174 Ill.2d 482, 504 (Ill. 1996). Plaintiffs have complied with these standards.

Plaintiffs have sufficiently alleged that they read the statement "Songs are 99¢," believed the assertion, were thereby induced to buy the cards in question, and were thereby damaged. In particular, Plaintiffs alleged:

> **As a direct and proximate result of the aforesaid violations** of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiffs and the members of the sub-class have suffered economic damage; **Plaintiffs and the members of the sub-class have purchased a product** that was and is worth less than **they were led to believe** as Defendant charged Plaintiffs and the members of the putative sub-class $0.30 more to download certain songs than Defendant represented it would at the time the 99¢ iTunes Cards were purchased.

(Compl. ¶ 58) (emphasis added). Asserting that the Plaintiffs purchased a product as a "direct and proximate" result of the complained of deceptive acts, i.e., "aforesaid violations," clearly indicates that Plaintiffs reviewed the deceptions at issue and were, in fact, deceived.

13

Further, in the above referenced paragraph, Plaintiffs have alleged that "they were led to believe" that they could purchase any song for 99¢. If Plaintiffs were "led to believe" the deception, it follows that they must have read, reviewed and were deceived by the statements at issue.

Finally, as clearly stated in the above referenced paragraph and in section II D above, Plaintiffs have alleged that the Apple's deceptive acts proximately caused them to suffer actual damage. Plaintiffs have properly pled proximate cause.

## III. OTHER CONSUMER PROTECTION STATUTES

Apple contends that consumer statutes of other states must be dismissed, because the suit presently has only Illinois plaintiffs and Illinois transactions at issue. That is partly true, but it overlooks the facts that the suit is brought as a class action, and that the Plaintiffs properly can represent a national class of consumers with claims for breach of contract. Breach of contract is Counts I and II of the Complaint, and a national class is pled for it (which is why transactions beyond the borders of Illinois are involved). Compl. ¶¶ 38 - 49. The threshold question of law for a national class is which state's law of contract controls the claim, and that is a choice of law issue which is not raised by Apple and is not ripe in the event.

The adequacy of the Plaintiffs as class representatives is not raised and is not ripe. Because discovery on the breach of contract claim should reveal the names of putative class members in other states, those persons can be added to the suit for purposes of maintaining claims under the consumer laws of the other states. For that reason, the claims under the other consumer laws should remain in the case at least until a decision on certification under *Fed.R.Civ.P.* 23, or until a motion under Rule 56 is decided. At one or both of those points, the capacity of the present Plaintiffs, or the capacity of other consumers identified and named to

serve as class representative from other states, can be considered. To decide the question now would be inefficient.

Based on the present pleading, putative class members for the contract claim who are from states other than Illinois can be named as representatives for claims based on consumer laws in addition to Illinois' CFA. A dismissal now of the claims based on other consumer laws would not operate in any way against persons to be named in the suit later as representative plaintiffs. *E.g.*, *Minority Police Officers Ass'n of South Bend v. City of South Bend*, 721 F.2d 197, 200 (7th Cir. 1983) ("[A] judgment for or against the named plaintiffs in a case that was not certified as a class action would not be res judicata in a suit brought by other, similarly situated claimants."). Accordingly, a dismissal now, if ordered, would be an exercise in futility. The consumer laws of other states could be added later, when representative plaintiffs from other states are added. It would be more efficient to recognize that inevitability than to take up and decide the question Apple presents now.

## IV. PARTICULARITY IS NOT LACKING; HOWEVER, SHOULD ADDITIONAL ALLEGATIONS BE IN ORDER, LEAVE SHOULD BE GRANTED TO ADD THEM.

Apple, in alleging defects in the Complaint, invokes the "particularity" requirement of *Fed.R.Civ.P. 9(b)* as a ground for dismissal. The Illinois Consumer Fraud Act ("ICFA") claim is the claim which implicates that requirement.

Under *Rule 9(b)*, Apple is entitled to argue that the allegations of misconduct insufficiently notify it of the particular facts of the fraud claim. The test is whether the facts are alleged completely enough to enable Apple to defend against the claim. *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 814 F.Supp. 720, 726 (N.D.Ill. 1993) ("Rule 9(b) is not to be read blindly, but is to be applied in order to effectuate the purposes of the rule which are: (1)

to inform the defendants of the claims against them and to enable them to form an adequate defense . . ."); *accord New England Data Services, Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987) (First of three purposes of Rule 9(b) requirement is "to place the defendants on notice and enable them to prepare meaningful responses.").

Apple cannot credibly maintain that it is unaware of the particulars of the claims. The robust denials and merits arguments of the Motion to Dismiss demonstrate that the Defendant is not hindered or prejudiced in any way by the alleged absence of sufficient particulars. Rule 9(b) is satisfied accordingly. *E.g.*, *Fujisawa Pharmaceutical*, *ante.* The fact that the fraud alleged is alleged to have occurred over a substantial period of time (a minimum of months) further supports that conclusion. Adding many additional dates to the Complaint would be of only slight value, in other words.

The Plaintiffs plead facts which are plausible on their face and constitute plausible entitlement to relief. The allegations therefore meet the test of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S.Ct. 1955, 1964-65, 1974 (2007). The allegations provide notice of the claims and the facts which entitle the Plaintiffs to relief under them. They pass muster under *Fed.R.Civ.P. 9(b)* for that reason, as shown by comparison to prior decisions of Illinois federal courts:

> To plead a cause of action for fraud, plaintiffs need not allege evidentiary details that will be used to support the claim at a later date. . . . They need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations.

*Mutuelle Generale Francaise Vie v. Life Insurance Co. of Pennsylvania*, 688 F.Supp. 386, 393 (N.D.Ill. 1988) (citation omitted).

Nevertheless, should the Court find that additional details are in order, it should grant the Plaintiffs leave to amend under the liberal allowance *Rule 9(b)* contemplates. In general, if a defendant is not sufficiently informed by a pleading of the particular facts of a fraud claim, the liberal allowance to amend contemplated by *Rule 9(b)* affords the pleader a chance to add details of the allegedly fraudulent conduct. *See e.g.*, 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure Civ. 3d Ed. § 1300 (2004). That allowance is particularly apt here – in the event the Court should find that the CFA claim presently is not adequately pled – for these reasons specifically:

> [A]n insufficient allegation of fraud or mistake under Rule 9(b) is subject to the liberal amendment provisions of Federal Rule 15, and, as the voluminous citations in the note below indicates, numerous cases have applied the two rules together. The result is that in most instances, when a motion based on a lack of sufficient particularity under Rule 9(b) is granted, whether or not coupled with a motion to dismiss, it will be with leave to amend the deficient pleading. Thus, a failure to satisfy Rule 9(b) will not automatically lead to a dismissal of the action, let alone one that leads to a judgment on the merits.
>
> Leave to replead will be denied, however, when the district court believes that it would be futile or when leave to replead has been granted previously but has not produced a satisfactory pleading.

<u>Wright and Miller</u>, <u>ante</u> ("Consequences of Failing to Plead Fraud or Mistake With Particularity") (footnotes omitted).

The liberal allowance to amend would be appropriate here. Previous leave has not been granted (the instant exception to the allowance), and there is no showing of futility (same). The Plaintiffs show that elements of their ICFA claim rest at this stage, prior to discovery, on circumstances. Accordingly, to strengthen the ICFA claim, and specifically to add any particularity the Court may find lacking, the Plaintiffs are prepared to allege more circumstances. The Plaintiffs, while maintaining that Apple does not need more particularity to defend the suit, are prepared to utilize the well-recognized allowance *Rule 9(b)* affords.

## Conclusion

The motion to dismiss is due to be denied for the foregoing reasons. If particularly is lacking, leave should be granted to amend the pleading.

Dated: September 28, 2009.

                Respectfully submitted,

                **ONDER, SHELTON, O'LEARY & PETERSON, LLC**

By:   /s/ Mark R. Niemeyer
      James G. Onder
      Mark R. Niemeyer
      Michael S. Kruse
      110 East Lockwood
      St. Louis, MO 63119
      314-963-9000 telephone
      314-963-1700 facsimile
      onder@onderlaw.com
      niemeyer@onderlaw.com
      kruse@onderlaw.com

      *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and accurate copy of the foregoing was sent on September 28, 2009 via the Court's CM/ECF filing system to the following:

Kathy A. Wisniewski
John W. Rogers
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO 63101
*Attorneys for Defendant Apple, Inc.*

                                                /s/ Mark R. Niemeyer